# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 16, 2019

No. 18-20611

Lyle W. Cayce
Clerk

DEJENAY BECKWITH, on her Own Behalf and Others Similarly Situated;
BEVERLY FLORES, on her Own Behalf and Others Similarly Situated,

Plaintiffs - Appellants

v.

CITY OF HOUSTON; MAYOR SYLVESTER TURNER; POLICE CHIEF ART
ACEVEDO; HOUSTON FORENSIC SCIENCE CENTER; PETER STOUT;
ANNISE PARKER; LEE P. BROWN; KATHY WHITMIRE; CHIEF
CHARLES MCCLELLAND; CHIEF CLARENCE BRADFORD; CHIEF SAM
NUCHIA,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CV-2859

Before BARKSDALE, STEWART, and COSTA, Circuit Judges.

PER CURIAM:*

This case is a putative class action based on claims by Plaintiffs Dejenay
Beckwith and Beverly Flores that the City of Houston and individual city
policy makers failed to test Sexual Assault Kits ("SAKs") following Plaintiffs'

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

sexual assaults by non-party perpetrators. Plaintiffs filed suit against the following Defendants: the City of Houston, Texas; Dr. Peter Stout, the 2017-appointed CEO of the Houston Forensic Science Center; the former Mayors of the City of Houston, Annise Parker (2010-2016), Bill White (2004-2010), Lee P. Brown (1998-2004), and Bob Lanier (deceased) (1992-1998); and former Police Chiefs of the City of Houston, Charles McClelland (2010-2016), Harold Hurtt (2004-2009), Clarence Bradford (1997-2004), Sam Nuchia (1992-1997), and Lee P. Brown (1982-1990). For the reasons stated herein, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs' second amended complaint contains the following allegations:

A. Dejenay Beckwith's Facts

Beckwith was sexually assaulted on April 2, 2011. She immediately notified the Houston Police Department ("HPD") and went to Memorial Hermann Southwest Hospital where the hospital staff collected a SAK. An HPD police officer then transported Beckwith's SAK to HPD for testing. HPD did not contact her again until 2015, when HPD told her that it had a suspect in her sexual assault case. She phoned HPD several months later to talk about the sexual assault but HPD did not call back.

HPD next contacted her in 2016 to tell her the suspect's name. Later that year, the Harris County District Attorney's Office notified her that her SAK had been tested and matched with HPD's suspect, David Lee Cooper ("Cooper"). Cooper had a long history of sexually assaulting women, including a minor child, dating back to 1991. Cooper's DNA had been included in the Combined DNA Index System, a DNA database system that matches DNA profiles of offenders to that of victims, since 1991. Cooper's previous sexual assault cases bear a similar fact pattern to Beckwith's assault. This contact with HPD in late 2016 was the first time she learned that Defendants delayed in testing her SAK. Had the City of Houston entered any of Cooper's victims'

genetic evidence from the untested SAKs, Cooper would have been stopped before he had a chance to sexually assault Beckwith. HPD had her identifying information and should have informed her that her SAK had gone untested for many years.

B. Beverly Flores' Facts

On September 20, 2011, Flores was raped by a home intruder. Flores contacted HPD after the perpetrator fled. She insisted that charges be filed against the perpetrator and "a SAKS was done," although she does not provide the name of the facility that administered her SAK. Two weeks after the sexual assault, an HPD detective visited Flores and told her that her SAK would be processed within three months.

Flores' perpetrator, Domeka Donta Turner ("Turner"), had committed a prior sexual assault on September 9, 2011. In August 2014, a routine DNA database run showed that there was a match between Flores' SAK and Turner. Had Houston run the results of her test on the DNA database sooner, Turner would have been apprehended earlier and "Flores would not have spent several years worried and concerned about the threat to herself and her children."

The City of Houston never notified Flores prior to 2017 that her SAK had been delayed in testing or that any other Houston rape victim had their SAKs delayed in testing. HPD had her identifying information and could have easily contacted her about the delay in testing. "The City of Houston, Mayor Annise Parker and her chiefs of police were aware of previous 'failure-to-test-rape-kit' lawsuits throughout the United States and this was a conscious decision by Mayor Parker and the City of Houston, to prevent rape victims from finding out the facts so that they would not make claims and sue the City of Houston and its employees and elected officials."

No. 18-20611

C. Additional Facts

Prior to April 2014, HPD routed sexual assault reports to two units: an adult investigative unit for victims 17 years of age and older, and a juvenile investigative unit for victims under 17. According to Plaintiffs, both units adopted a practice of submitting all SAKs for testing. In 2010, HPD determined that it held approximately 4,220 SAKs in cold storage that had not been tested by a crime lab. As a result, the City of Houston organized the Houston Forensic Science Center. In 2013, the City of Houston devoted $2.2 million to test all untested rape kits, but the Houston Forensic Science Center, the City of Houston, and the individually named Defendants decided to test only a fraction of the SAKs. Plaintiffs allege that Defendants, with deliberate indifference, maintained a policy, practice and/or custom for the past 30 years of not submitting SAKs for testing, not reviewing test results, and failing to preserve evidence. Plaintiffs add that this policy has a discriminatory purpose and adverse impact on females.

D. Procedural History

On September 24, 2017, Beckwith filed her original putative class action complaint against Defendants. On December 20, 2017, Beckwith filed her first amended complaint, adding Flores as an additional named plaintiff. In their second amended complaint, Plaintiffs sued all defendants in their individual and official capacities under 42 U.S.C. § 1983 for alleged violations of the Due Process and Equal Protection Clauses. They further asserted alleged violations of substantive due process, the Fourth Amendment, the Fifth Amendment "Takings" Clause, and negligence claims under state law. They also brought claims for conspiracy to interfere with their civil rights under 42 U.S.C. § 1985 and for negligently failing to prevent civil rights violations under 42 U.S.C.

4

No. 18-20611

§ 1986. Plaintiffs seek "damages for violation of civil rights under color of law, injunctive relief requiring Defendants to change the methods used to investigate sexual assault and for the award of attorney fees and cost[s]."

Defendants filed an amended motion to dismiss Plaintiffs' second amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or, in the alternative, a motion for summary judgment. The district court granted Defendants' Rule 12(b)(1) motion to dismiss Plaintiffs' claims under § 1983 for alleged violations of the Due Process and Equal Protection clauses and Plaintiffs' state law negligence claims. The district court also granted Defendants' Rule 12(b)(6) motion to dismiss Plaintiffs' remaining claims asserting 42 U.S.C. §§ 1985 and 1986 claims along with alleged violations of substantive due process, the Fourth Amendment, and the Fifth Amendment "Takings" Clause. This appeal ensued.

## II. STANDARD OF REVIEW

We review de novo the district court's grant of a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *See Copeland v. Wasserstein*, 278 F.3d 472, 477 (5th Cir. 2002). To survive a Rule 12(b)(6) motion, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, they must "'raise a right to relief above the speculative level.'" *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570).

## III. DISCUSSION

A. <u>Motion to Dismiss 42 U.S.C. §§ 1983, 1985, and 1986 Claims and Negligence Claims</u>

Plaintiffs assert that the district court erred by dismissing their claims under § 1983 and negligence claims under state law pursuant to Rule 12(b)(1)

No. 18-20611

as barred by the statute of limitations.1 However, because a 12(b)(1) motion based on timeliness invokes Rule 12(b)(6), we evaluate this motion under the more appropriate 12(b)(6) standard. *See Watts v. Graves*, 720 F.2d 1416, 1422–23 (5th Cir. 1983) (per curiam) ("The statute of limitations [in a § 1983 action] may serve as a proper ground for dismissal under Federal Rule of Civil Procedure 12(b)(6) . . . ."); *see also Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) ("A statute of limitations may support dismissal under Rule 12(b)(6) . . . ."); *Songbyrd, Inc. v. Bearsville Records, Inc.*, 104 F.3d 773, 775 n.3 (5th Cir. 1997) (stating that the affirmative defense of limitations may properly be asserted in a Rule 12(b)(6) motion); *Triplett v. Heckler*, 767 F.2d 210, 211–12 (5th Cir. 1985) (stating that the defendant's 12(b)(1) motion to dismiss based on timeliness invoked Rule 12(b)(6), not Rule 12(b)(1)); *Carcamo-Lopez v. Does 1 through 20*, No. EP–09–CV–371–KC, 2011 WL 318148, at *2 (W.D. Tex. Jan. 29, 2011) (treating defendant's 12(b)(1) motion to dismiss civil rights claims as a 12(b)(6) motion instead of denying the motion).

    1. <u>Applicability of Texas' 2-Year Statute of Limitations</u>

Plaintiffs advance four theories for why the limitations period should not apply to them: (1) a more specific, five-year limitations period applies; (2) the limitations period was tolled for fraudulent concealment; (3) the limitations period was tolled under the discovery rule; and (4) the limitations period was tolled because Defendants' conduct constituted a continuing tort. We address each argument in turn.

First, Plaintiffs argue that the court should apply the five-year limitations period for personal injury claims arising from sexual assault to both

---

1 Plaintiffs also assert that the district court's summary judgment ruling based on the statute of limitations was premature because the court should have first permitted full discovery on the merits. However, the district court made clear that its ruling on limitations was based on Defendants' Rule 12(b) motions, not summary judgment.

No. 18-20611

their § 1983 and state law claims. *See* TEX. CIV. PRAC. & REM. CODE § 16.0045(b). But Texas' general personal injury limitations period is two years. TEX. CIV. PRAC. & REM. CODE § 16.003(a); *see also Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989). And federal courts use the forum state's general personal injury limitations period to govern claims under § 1983. *Owens v. Okure*, 488 U.S. 235, 240–41 (1989); *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759 (5th Cir. 2015); *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).

In *Owens*, the Supreme Court held that "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." 488 U.S. at 249–50. In *King-White*, we cited *Owens* and rejected essentially the same argument Plaintiffs make here: that the court should apply § 16.0045 to their claims under § 1983 against a school district for claims stemming from sexual assault by a teacher. 803 F.3d at 761 ("[T]o eliminate the 'confusion and inconsistency' that had grown from this 'practice of seeking state-law analogies for particular § 1983 claims,' . . . the [Supreme] Court determined that all § 1983 claims should be subject to 'a simple, broad characterization' as personal injury actions for limitations purposes.").

Further, § 16.0045 has not been extended to civil rights cases or beyond claims against perpetrators of sexual assaults or those who may be directly or vicariously liable for their actions. Plaintiffs have not alleged that Defendants hired or exercised any control over their perpetrators. *Cf. Doe v. Catholic Soc. of Religious & Literary Educ.*, Civ. A. H-09-1059, 2010 WL 345926, at *16 (S.D. Tex. Jan. 22, 2010) (applying five-year limitations period where parishioner brought an action against a diocese and church for alleged negligence in allowing one of its priests to sexually assault the parishioner when she was a minor); *Stephanie M. v. Coptic Orthodox Patriarchate Diocese*, 362 S.W.3d 656,

660 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (applying five-year statute against defendants whose negligence proximately caused the sexual assault). As such, Plaintiffs' claims under § 1983, like their state law negligence claims, are governed by a two-year statute of limitations.

Second, Plaintiffs argue that fraudulent concealment tolls the statute of limitations. "When a federal cause of action borrows a state statute of limitations, 'coordinate tolling rules' are usually borrowed as well." *King-White*, 803 F.3d at 764 (citation omitted). In Texas, tolling of the statute of limitations may occur where a defendant is "under a duty to make disclosure but fraudulently conceals the existence of a cause of action from the party to whom it belongs." *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983). "Fraudulent concealment will not, however, bar limitations when the plaintiff discovers the wrong or could have discovered it through the exercise of reasonable diligence." *Kerlin v. Sauceda*, 263 S.W.3d 920, 925 (Tex. 2008).

Plaintiffs contend that Defendants fraudulently concealed the delay in testing of Plaintiffs' SAKs. On February 13, 2013, the Houston Mayor's Office published a press release detailing the backlog in SAK testing at HPD and the steps that the City of Houston was taking to clear up the backlog. In December 2013, HPD launched a hotline for sexual assault victims to obtain more information about their cases. HPD advertised the hotline through billboards, television, and bilingual pamphlets distributed throughout the city. The backlogged testing of SAKs was public information that Defendants were not hiding. Moreover, had Plaintiffs investigated the status of their SAKs, they would have learned that their SAKs had remained untested. Rather than proactively contact HPD, Plaintiffs waited for HPD to contact them and made no further inquiry even when the circumstances would have led a reasonable person to inquire further. Accordingly, we hold that the doctrine of fraudulent concealment does not apply here.

Third, Plaintiffs argue that the limitations period was tolled under Texas' discovery rule. The discovery rule applies if the "nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *King-White*, 803 F.3d at 764 (quoting *Childs v. Haussecker*, 974 S.W.2d 31, 36–37 (Tex. 1998)). But a plaintiff seeking to employ the discovery rule must use diligence to investigate the facts establishing the elements of her cause of action. *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex. 1988). For the reasons discussed above, we agree with the district court that Plaintiffs did not exercise diligence in their cases. Therefore, we hold that the discovery rule does not apply here to toll the statute of limitations.

Finally, Plaintiffs argue that the statute of limitations should be tolled because Defendants' conduct constitutes a continuing tort. "In a continuing-tort case, the wrongful conduct continues to effect additional injury to the plaintiff until that conduct stops." *Gen. Universal Sys. Inc. v. HAL, Inc.*, 500 F.3d 444, 451 (5th Cir. 2007) (quoting *Upjohn Co. v. Freeman*, 885 S.W.2d 538, 542 (Tex. App.—Dallas 1994, writ denied)). "For continuing torts, 'the cause of action is not complete and does not accrue until the tortious acts have ceased.'" *Id.* (quoting *Twyman v. Twyman*, 790 S.W.2d 819, 821 (Tex. App.—Austin 1990), *rev'd on other grounds*, 855 S.W.2d 619 (Tex. 1993)). Plaintiffs have not alleged that Defendants are continually committing a tort against them, nor could they—Defendants tested Plaintiffs' SAKs by 2014. Instead, Plaintiffs rely on Defendants' continual failure to timely test SAKs for other putative class members. However, this argument fails where Plaintiffs can only show one instance of allegedly wrongful conduct that was not repeated against them and that occurred outside the limitations period.

Based on the foregoing, we hold that the two-year statute of limitations bars Plaintiffs' state law negligence claims and their claims under § 1983.

No. 18-20611

2. Accrual of Claims Under 42 U.S.C. § 1983 and Negligence Claims

Plaintiffs also contest the accrual date of their § 1983 and negligence claims. Accrual of a § 1983 claim is governed by federal law. "'Under federal law, the [limitations] period begins to run the moment the plaintiff becomes aware that [s]he has suffered an injury or has sufficient information to know that [s]he has been injured.'" *Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008) (quoting *Russell v. Bd. of Trs. of the Firemen*, 968 F.2d 489, 493 (5th Cir. 1992)). Awareness is found via two elements: "(1) The existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." *Piotrowski v. City of Hous.*, 51 F.3d 512, 516 (5th Cir. 1995).

Plaintiffs claim that their claims under § 1983 accrued on "the date each Plaintiff was notified that her kit had not been previously tested, which for both Beckwith/Flores was in late 2016." Plaintiffs assert that Defendants were required to notify Plaintiffs of the delayed testing of their SAKs. But "[a] plaintiff who has learned of facts which would cause a reasonable person to inquire further must proceed with a reasonable and diligent investigation, [sic] and is charged with the knowledge of all facts such an investigation would have disclosed." *Jensen v. Snellings*, 841 F.2d 600, 607 (5th Cir. 1988).

Flores alleges that two weeks after her assault in September 2011, Defendants told her that her SAK would be processed in three months' time. As the district court noted,

> [e]ven assuming that the relevant injury was Defendants' delay in the testing of her SAK, rather than her sexual assault, Flores' § 1983 claims would have accrued after three months had passed and her SAK remained untested. A reasonable person in Flores' position would have followed up with Defendants regarding the testing of her SAK after three months had passed.

*Beckwith v. City of Hous.*, No. 4:17-CV-02859, 2018 WL 4298345, at *7 (S.D. Tex. July 31, 2018).

10

Beckwith does not allege that Defendants gave her a timeline for her SAK's testing. However, after Defendants administered her SAK in April 2011, she did nothing for years. As the district court noted, "even after HPD contacted her [in 2015 to notify her that it found a suspect, she] did not follow up until she unsuccessfully phoned HPD several months later and HPD did not return her call." *Id.* Accordingly, Plaintiffs had facts by the end of 2011 to support a § 1983 claim that Defendants had delayed testing of their SAKs, but they did not act on those facts within the two-year statute of limitations.

As to Plaintiffs' state law claim, accrual of a personal injury cause of action under Texas law generally "occurs on the date 'the plaintiff first becomes entitled to sue the defendant based upon a legal wrong attributed to the latter', even if the plaintiff is unaware of the injury." *Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1140 (5th Cir. 1997) (quoting *Zidell v. Bird*, 692 S.W.2d 550, 554 (Tex. App.—Austin 1985, no writ); *see also S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996) ("As a rule, we have held that a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred.").

Plaintiffs' second amended complaint alleges that Defendants should have tested Plaintiffs' SAKs within 30 days of collection. *See* TEX. GOV'T CODE § 420.042(a) ("A law enforcement agency that receives evidence of a sexual assault or other sex offense . . . shall submit that evidence to a public accredited crime laboratory for analysis not later than the 30th day after the date on which that evidence was received."). Beckwith's SAK was collected on April 2, 2011. Flores' SAK was collected on or about September 20, 2011. Therefore, Beckwith's claim would have accrued in May 2011 and Flores' in October 2011, regardless of when Defendants notified them of the delay in testing. Because Plaintiffs brought their state law causes of action approximately six years

later, on September 24, 2017, the two-year statute of limitations bars Plaintiffs' state law causes of action.

### 3. Plaintiffs' Claims Under 42 U.S.C. §§ 1985, 1986

Plaintiffs also claim that Defendants conspired to interfere with Plaintiffs' civil rights in violation of 42 U.S.C. § 1985 and negligently failed to prevent a known conspiracy to interfere with Plaintiffs' civil rights in violation of § 1986. "Because there is no federal statute of limitations for actions brought pursuant to 42 U.S.C. §§ 1983 and 1985, federal courts borrow the forum state's general personal injury limitations period." *Balawajder v. Carpenter*, 1993 WL 152087, at *1 (5th Cir. 1993) (per curiam) (citing *Helton v. Clements*, 832 F.2d 332, 334 (5th Cir. 1987)). In a § 1985 claim, "the actionable civil injury to a plaintiff results from the overt acts of the defendants, not from the mere continuation of a conspiracy." *Helton*, 832 F.2d at 335. Thus, "any cause of action against the defendants accrued as soon as [the plaintiffs] knew or should have known of the overt acts involved in the alleged conspiracy." *Id*. For the reasons already stated regarding Plaintiffs' claims under § 1983, Plaintiffs' claims brought under § 1985 are also dismissed.

A § 1986 cause of action is dependent on a claimant's successful pleading of a § 1985 claim first. *See Hamilton v. Chaffin*, 506 F.2d 904, 914 (5th Cir. 1975) ("Because of th[e] failure to state a claim cognizable under Section 1985(3), appellant may not recover under the interrelated, dependent cause of action under Section 1986 . . . for neglecting to prevent a known conspiracy under Section 1985"); *see generally McVea v. Swan*, No. SA:14–CV–73–DAE, 2014 WL 4471529, at *5 (W.D. Tex. Sept. 10, 2014) ("As stated in the statute itself, in order to establish a violation of § 1986, a plaintiff must first establish a violation of § 1985."). Claims under § 1986 are governed by a statute of limitations of one year. *See Balawajder*, 1993 WL 152087, at *3 (5th Cir. 1993) (per curiam) ("Unlike §§ 1983 and 1985, § 1986 has its own statute of

limitations which requires commencement of a suit within one year after the cause of action accrues."). Since Plaintiffs' § 1985 claims are time-barred, their § 1986 claims necessarily fail.

B. <u>Motion to Dismiss Remaining Claims</u>

Plaintiffs aver that the district court erred in its Rule 12(b)(6) dismissal of their remaining claims for violations of substantive due process, the Fourth Amendment, and the Fifth Amendment Takings Clause. Plaintiffs brought these claims separate and apart from their other constitutional claims under 42 U.S.C. § 1983. However, we must consider these claims under 42 U.S.C. § 1983 because a private right of action is needed to assert a constitutional claim. We have already held that the § 1983 claims are subject to the applicable statute of limitations. Likewise, we hold that these claims are also subject to the applicable two-year statute of limitations and are therefore time-barred for all of the reasons already stated in our foregoing analysis. Accordingly, these remaining constitutional claims are dismissed.

## IV. CONCLUSION

The district court's judgment is AFFIRMED.